J-S62018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEROME JENKINS, | |
| Appellant | No. 2546 EDA 2013 |

Appeal from the Judgment of Sentence of May 3, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009287-2011

BEFORE:  ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 06, 2014**

Appellant, Jerome Jenkins, appeals from the judgment of sentence entered on May 3, 2013 in the Criminal Division of the Court of Common Pleas of Philadelphia County, as made final by the denial of post-sentence motions on August 23, 2013.  We affirm.

The trial court summarized the factual history in this case as follows:

At trial, the Commonwealth presented the testimony of victim Bernadette Davis, Police Officer Bragg, Police Officer Loretta Ammons, Police Officer Landherr, Detective Sharice Gilbert, and Naser Ahmad.  [Appellant] testified on his own behalf and also introduced testimony from his father, Harold Jenkins.  There was a stipulation by and between counsel that if Bruce Tarakoff, Nathaniel Jenkins, Oronica Fields, Valerie Perkins Jenkins, Deanna Jenkins, and Vickie Jenkins testified, they would testify that [Appellant] has a reputation for being a law-abiding, non-violent, and truthful citizen.  Viewed in the light most favorable to the Commonwealth as the verdict winner, the [trial] testimony established the following.

On June 21, 2011, at approximately 12:48 a.m., Bernadette Davis and her daughter Nadia Davis exited a bus at the intersection of Queen Lane and Green Street. They were walking towards their home when they passed a Sunoco gas station and encountered [Appellant], who was tapping on a window with a gun. [Appellant] was approximately ten feet away from Ms. Davis and her daughter. As Ms. Davis and her daughter approached, [Appellant] turned around and waved a gun back and forth towards them and repeated, "I got a victim now." Ms. Davis and her daughter were now approximately one foot away from [Appellant]. Ms. Davis begged [Appellant] not to shoot her and her daughter. Ms. Davis backed away from [Appellant], but he continued to quickly approach them waving the gun toward their heads. Ms. Davis and her daughter escaped from [Appellant] by running down Green Street toward Penn Street. [Appellant] started shooting at them approximately two to three seconds later. Ms. Davis both saw and felt the first bullet fired whiz by her. As Ms. Davis and her daughter ran, [Appellant] shot at them at least ten more times.

As she ran and turned the corner on Penn Street, Ms. Davis called 9-1-1. She then hid in the bushes at 128 Penn Street. Off-duty Police Officer Price heard the shots and came out of 128 Penn Street with a gun and calmed Ms. Davis down. Ms. Davis and Officer Price walked back towards the gas station and observed several police vehicles drive by. The police arrived approximately one minute after receiving a radio call and observed multiple shell casings in the street and on the sidewalk of the Sunoco property. In total, thirteen shell casings were recovered. There were several parked cars on the same side of Sunoco located on Queen Lane that were struck and damaged by the bullets.

A short time later, a police officer approached Ms. Davis, with [Appellant]. Ms. Davis identified [Appellant] as the person who had shot at her and her daughter.

Trial Court Opinion, 3/26/14, at 3-4.

The trial court summarized the procedural history of this case as follows:

> On January 11, 2013, following a bench trial[, Appellant] was convicted of two counts of attempted murder (18 [Pa.C.S.A.] § 901(a)), two counts of aggravated assault (18 Pa.C.S.A. § 2702(a)), two counts of simple assault (18 Pa.C.S.A. § 270[1](a)), two counts of terroristic threats (18 Pa.C.S.A. § 2706(a)(1)), one count of possessing an instrument of crime (PIC) (18 Pa.C.S.A. § 907(a)), and two counts of recklessly endangering another person (REAP) (18 Pa.C.S.A. § 2705). The [c]ourt deferred sentencing so that a presentence investigation report and mental health evaluation report could be prepared. [On May 3, 2013, the court imposed an aggregate sentence of seven and one-half to 15 years' incarceration.]

***Id.*** at 1.[1]

> Appellant's brief raises the following issues for our review:
>
> Was the evidence insufficient to support Appellant's attempted murder convictions?
>
> Was the evidence insufficient to support Appellant's aggravated assault convictions?
>
> Were the verdicts finding Appellant guilty of attempted murder and aggravated assault were [sic] against the weight of the evidence?

Appellant's Brief at 3 (block capitalization omitted).

We have carefully reviewed the certified record, the submissions of the parties on appeal, and the opinion of the trial court issued on March 26, 2014. We conclude, based upon our review, that Appellant is not entitled to relief for the reasons expressed by the trial court in its opinion. Since the trial court adequately and accurately addressed the issues raised by

---

[1] Both Appellant and the trial court have complied with the requirements of Pa.R.A.P. 1925.

Appellant in this appeal, we adopt the trial court's March 26, 2014 opinion as our own. We therefore direct the parties to include a copy of the trial court's opinion with all future submissions pertaining to the disposition of this appeal.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014

Appendix "A"

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

**FILED**

MAR 2 6 2014

Criminal Appeals Unit
First Judicial District of PA

CP-51-CR-0009287-2011

v.

JEROME JENKINS

2546 EDA 2013

OPINION

BUTCHART, J.

March 26, 2014

## I. PROCEDURAL BACKGROUND

On January 11, 2013, following a bench trial before this Court, Defendant Jerome Jenkins was convicted of two counts of attempted murder (18 §901(a)), two counts of aggravated assault (18 Pa.C.S. §2702(a)), two counts of simple assault (18 Pa.C.S. §2702(a)), two counts of terroristic threats (18 Pa.C.S. §2706(a)(1)), one count of possessing an instrument of crime ("PIC") (18 Pa.C.S. §907(a)), and two counts of recklessly endangering another person ("REAP") (18 Pa.C.S. §2705). The Court deferred sentencing so that a presentence investigation report and a mental health evaluation report could be prepared.

On May 3, 2013, the Court imposed concurrent sentences of seven and one half to fifteen years incarceration on the charges of attempted murder, two and one half to five years incarceration on the charges of terroristic threats, and two and one half to five years incarceration on the charge of PIC. Defendant filed a post-sentence motion, which was denied by the Court on August 23, 2013. Defendant has now appealed from the judgment of sentence entered by the Court alleging that: 1) " The evidence was insufficient to support Appellant's attempted murder convictions because the Commonwealth failed to present sufficient evidence to establish beyond a reasonable doubt that Appellant acted with the specific intent to kill the Complain[ants] where

1

the evidence showed that despite having the ability to shoot the Complainants, Appellant did not harm them. The Complainants were around the corner when the shots were fired, and there was evidence that the shots were fired in the direction of Queen Lane, not in the direction the Complainants ran. 2) The evidence was insufficient to support Appellant's aggravated assault convictions because the Commonwealth failed to present sufficient evidence to establish beyond a reasonable doubt that Appellant acted with the specific intent to cause serious bodily injury to the Complainants. The law is clear that where, as here, an injury is not incurred by the alleged victim, the Commonwealth must establish that the accused acted with specific intent to harm in order to obtain an aggravated assault conviction. Specifically, the Commonwealth failed to prove intent to harm because the Complainants were not harm[ed] even though Appellant had the ability and opportunity to shoot them. The Complainants were around the corner when the shots were fired, and there was evidence that the shots were fired in the direction of Queen Lane, not in the direction the Complainants ran. 3) The verdicts finding Appellant guilty of attempted murder and aggravated assault were against the weight of the evidence because the record shows that despite being close enough to the victims to inflict injury to them, the victims suffered no injuries, and the evidence showed that Appellant did not fire in the direction of the Complainants, who had fled around a corner where they were safe from injury when the shots were fired. In addition, Appellant presented evidence of good character, which, by itself, could induce a not guilty verdict. 4) Trial counsel was ineffective for failing to call Dwayne Gibbs as a witness who, if called to the stand, was ready to testify that when Appellant asked for a cigarette, he gave Appellant, without Appellant's knowledge, one coated with PCP. Defendant's 1925(b) Statement ("Matters Complained of on Appeal") at ¶¶ 1-4. For the reasons set forth below, Defendant's claims are without merit and the judgment of sentence should be affirmed.

2

## II. FACTUAL BACKGROUND

At trial, the Commonwealth presented the testimony of victim Bernadette Davis, Police Officer Bragg, Police Officer Loretta Ammons, Police Officer Landherr, Detective Sharice Gilbert, and Naser Ahmad. Defendant testified on his own behalf and also introduced testimony from his father, Harold Jenkins. There was a stipulation by and between counsel that if Bruce Tarakoff, Nathaniel Jenkins, Oronica Fields, Valerie Perkins Jenkins, Deanna Jenkins, and Vickie Jenkins testified, they would testify that Defendant has a reputation for being a law-abiding, non-violent, and truthful citizen. Viewed in the light most favorable to the Commonwealth as the verdict winner, their testimony established the following.

On June 21, 2011, at approximately 12:48 a.m., Bernadette Davis and her daughter Nadia Davis exited a bus at the intersection of Queen Lane and Green Street. N.T. 10/15/12 p. 20, 23. They were walking towards their home when they passed a Sunoco gas station and encountered Defendant, who was tapping on a window with a gun. N.T. 10/15/12 p. 21, 24 and N.T. 1/11/13 pp. 8, 17. Defendant was approximately ten feet away from Ms. Davis and her daughter. N.T. 10/15/12 p. 22, 25. As Ms. Davis and her daughter approached, Defendant turned around and waved a gun back and forth towards them and repeated, "I got a victim now." N.T. 10/15/12 p. 21, 24, 25, 34. Ms. Davis and her daughter were now approximately one foot away from Defendant. N.T. 10/15/12 pp. 24-25. Ms. Davis begged Defendant not to shoot her and her daughter. N.T. 10/15/12 p. 21, 24. Ms. Davis backed away from Defendant, but he continued to quickly approach them waving the gun toward their heads. N.T. 10/15/12 p. 21, 25 and N.T. 1/11/13 p. 34, 36. Ms. Davis and her daughter escaped from defendant by running down Green Street toward Penn Street. N.T. 10/15/12 p. 21, 26. Defendant started shooting at them approximately two to three seconds later. N.T. 10/15/12 pp. 21-22, 26-27. Ms. Davis both saw

3

and felt the first bullet fired whiz by her. N.T. 10/15/12 pp. 26-27. As Ms. Davis and her daughter ran, Defendant shot at them at least ten more times. N.T. 10/15/12 pp. 26-27, 22.

As she ran and turned the corner on Penn Street, Ms. Davis called 9-1-1. N.T. 10/15/12 p. 29. She then hid in the bushes at 128 Penn Street. N.T. 10/15/12 pp. 21-22, 26-28. Off-duty Police Officer Price heard the shots and came out of 128 Penn Street with a gun and calmed Ms. Davis down. N.T. 10/15/12 pp. 22, 26, 28, 40. Ms. Davis and Officer Price walked back towards the gas station and observed several police vehicles drive by. N.T. 10/15/12 pp. 28-29. The police arrived approximately one minute after receiving a radio call and observed multiple shell casings in the street and on the sidewalk of the Sunoco property. N.T. 10/15/12 p. 37. In total, thirteen shell casings were recovered. Commonwealth Exhibit 14. There were several parked cars on the same side of Sunoco located on Queen Lane that were struck and damaged by the bullets. N.T. 10/15/12 pp. 42-50.

A short time later, a police officer approached Ms. Davis, with Defendant. N.T. 10/15/12 p. 30 and N.T. 1/11/13 pp.23-24. Ms. Davis identified Defendant as the person who had shot at her and her daughter. Id.

## III. DISCUSSION

### A. Sufficiency of the Evidence

In considering a challenge to the sufficiency of the evidence, the Court must decide whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt. Commonwealth v. Muniz, 5 A. 3d 345, 348 (Pa. Super. 2010), *appeal denied*, 19 A.3d 1050 (Pa. 2011) (citing Commonwealth v. Hennigan, 753 A.2d 245, 253

4

(Pa. Super. 2000)). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.

Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so week and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Commonwealth v. Cassidy, 668 A.2d 1143, 1144 (Pa. Super. 1995), *appeal denied,* 681 A.2d 176 (Pa. 1996) (citation omitted). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Id.* "Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." Muniz, 5 A.3d at 348 (Pa. Super. 2010). Finally, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.*

### 1. Attempted Murder

Defendant first claims that "the evidence was insufficient to support Appellant's attempted murder convictions because the Commonwealth failed to present sufficient evidence to establish beyond a reasonable doubt that Appellant acted with the specific intent to kill the Complainants. Appellant did not harm them, the Complainants were around the corner when the shots were fired, and there was evidence that the shots were fired in the direction of Queen Lane, not in the direction the Complainants ran." Statement of Errors at ¶ 1. This claim is without merit.

A person is guilty of attempted murder if he commits an act that is a substantial step towards the commission of the crime with a specific intent to kill. *See* 18 Pa.C.S. § 901; 2502(a). "A conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt that the defendant had the specific intent to kill and took a substantial step

5

towards that goal." *Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008); *see* 18 Pa.C.S. §§ 901, 2502. A specific intent to kill may be inferred from circumstantial evidence. *Commonwealth v. Hobson*, 604 A.2d 717, 719-20 (Pa. Super. 1992).

Here, the evidence proved that Defendant intended to kill Bernadette and Aniyah Davis when he fired his gun directly at them at least thirteen times. Ms. Davis's testimony, as well as the ballistics evidence in this case, show that defendant had a specific intent to kill Bernadette and Aniyah Davis. Defendant accosted the Complainants initially and waved the gun at them both while repeating, "I got a victim now." He continued to wave the gun back and forth at them. As the Complainants turned to run, Defendant walked faster towards them and within a matter of seconds began to fire in their direction. Ms. Davis testified that she felt and saw a bullet whiz by her. N.T. 10/15/12 pp. 26-27. Thirteen fired cartridge casings were recovered from the crime scene. *See* Commonwealth Exhibit 14. This was ample evidence from which a reasonable factfinder could conclude that Defendant was guilty of attempted murder.

As to Defendant's claim that he did not shoot his gun in the direction of the Complainants, this claim is squarely refuted by the record. Ms. Davis's testimony clearly established that the Complainants were not around the corner when Defendant began firing at them. Rather, Ms. Davis testified that she saw the first bullet that defendant fired fly past her *as* she turned around a corner in an attempt to flee from defendant. N.T. 10/15/12 pp. 26-27.[1]

---

[1] [Assistant District Attorney] Let me stop you right there. So when you turn and start running with your daughter, how quickly after you started running did you hear the first shot?

[Complainant] It was like two, three seconds like. It was so close. The first fire when he first shot, I seen it fire past me as I turned the corner.

[Assistant District Attorney] When you say you seen it fire past you--

[Complainant] The bullet, like the fire from the gun.

[Assistant District Attorney] Okay. So could you actually feel or see the bullet whizzing?

6

Defendant then continued to shoot at Ms. Davis and her daughter as they fled. Defendant's threat to the Complainants, his approach while waving a gun, and ultimately shooting his gun directly at them established that he had the specific intent to commit attempted murder. No relief is due on this claim.

### 2. Aggravated Assault

Defendant claims that "the evidence was insufficient to support Appellant's aggravated assault convictions because the Commonwealth failed to present sufficient evidence to establish beyond a reasonable doubt that Appellant acted with the specific intent to cause serious bodily injury to the Complainants. The law is clear that where, as here, an injury is not incurred by the alleged victim, the Commonwealth must establish that the accused acted with specific intent to harm in order to obtain an aggravated assault conviction. Specifically, the Commonwealth failed to prove intent to harm because the Complainants were not harm[ed] even though Appellant had the ability and opportunity to shoot them. The Complainants were around the corner when the shots were fired, and there was evidence that the shots were fired in the direction of Queen Lane, not in the direction the Complainants ran." Statement of Errors at ¶ 2. This claim is without merit.

A person is guilty of aggravated assault if he: "attempts to cause serious bodily injury to another...," or he "attempts to cause...bodily injury to another with a deadly weapon." 18 Pa.C.S. §2702(a)(1) and (4). "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or

---

[Complainant] Yes.

[Assistant District Attorney] Okay. And you kept running and did he keep firing as you were running?

[Complainant] Yes. N.T. 10/15/12 pp. 26-27.

impairment of the function of any bodily member or organ." 18 Pa.C.S. §2301. In order to sustain a conviction for aggravated assault, the Commonwealth does not have to prove that the serious bodily injury was actually inflicted but rather that a defendant acted with the specific intent to cause such injury. Commonwealth v. Holley, 945 A.2d 241, 247 (Pa. Super. 2008) (quoting Commonwealth v. Lewis, 911 A.2d. 558, 564 (Pa. Super. 2006)). The Commonwealth may prove intent to cause serious bodily injury by circumstantial evidence. Holley at 247. In determining whether the Commonwealth proved that a defendant had the requisite specific intent, the fact-finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom. Id. A determination of whether a defendant acted with intent to cause serious bodily injury must be determined on a case-by-case basis. Id. Intent can be inferred from acts or conduct or from the attendant circumstance. Id.

In the instant matter, Defendant clearly attempted to cause bodily injury to Ms. Davis and her daughter using a deadly weapon. As discussed in Section I(A)(1), above, Defendant possessed a gun which he initially waved at both victims while standing less than a foot away from them. N.T. 10/15/12 pp. 24-25. Defendant also repeated that he had found a "victim," placing Ms. Davis in extreme fear that she was going to lose her life. N.T. 10/15/12 p. 21, 24, 25, 34. As she and her daughter attempted to flee from Defendant, he fired several shots towards them. N.T. 10/15/12 p. 21, 26. Defendant began firing two to three seconds after Ms. Davis and her daughter began to run; he fired at least thirteen times in the direction of Ms. Davis and her daughter. N.T. 10/15/12 pp. 21-22, 26-27; Commonwealth Exhibit 14. It is clear from the evidence presented at trial that Defendant intended to cause serious bodily injury to both Ms. Davis and her daughter. No relief is due on this claim.

8

## B. Weight of the Evidence

Defendant next claims that "the verdicts finding Appellant guilty of attempted murder and aggravated assault were against the weight of the evidence because the record shows that despite being close enough to the victims to inflict injury to them, the victims suffered no injuries, and the evidence showed that Appellant did not fire in the direction of the Complainants, who had fled around a corner where they were safe from injury when the shots were fired." Statement of Errors at ¶ 3. This claim is without merit.

It is well-established that a new trial may only be granted by the trial court where the verdict was so contrary to the weight of the evidence as to "shock one's sense of justice." Commonwealth v. Rossetti, 863 A.2d 1185, 1191 (Pa. Super. 2004), *appeal denied*, 878 A.2d 864 (Pa. 2005) (quoting Commonwealth v. Hunter, 554 A.2d 550, 555) (Pa. Super. 1989)). Moreover, credibility determinations are solely within the province of the fact-finder, and "an appellate court may not reweigh the evidence and substitute its judgment for that of the finder of fact." Commonwealth v. Taylor, 63 A.3d 327 (Pa. Super. 2013) (quoting Commonwealth v. Shaffer, 40 A.3d 1250, 1253 (Pa. Super. 2012)). Whether a new trial should be granted on the ground that a conviction was against the weight of the evidence is addressed to the sound discretion of the trial judge, and that decision will not be reversed on appeal absent a showing of abuse of discretion. Commonwealth v. Petteway, 847 A.2d 713, 716 (Pa. Super. 2004) (citing Commonwealth v. Davis, 799 A.2d 860, 865 (Pa. Super. 2002)).

As outlined above, the evidence presented at trial clearly established that Defendant committed the crimes for which he was convicted. The Court credited the testimony of Ms. Davis and the police officers, along with the other evidence presented at trial over Defendant's

9

testimony. Defendant also claims that "Appellant presented evidence of good character, which, by itself, could induce a not guilty verdict." Statement of Errors at ¶ 3(a). The Court, as the finder of fact, was free to credit the compelling testimony of Bernadette Davis, the victim, and reject the character evidence presented by Defendant. No relief is due.

### C. Trial Counsel was not Ineffective

Defendant claims that "trial counsel was ineffective for failing to call Dwayne Gibbs as a witness who, if called to the stand, was ready to testify that when Appellant asked for a cigarette, he gave Appellant, without Appellant's knowledge, one coated with PCP." Statement of Errors at ¶ 4. This claim is without merit.

Defendant reserves the right to litigate a claim of ineffective assistance of trial counsel. Pursuant to Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002), claims of ineffectiveness of trial counsel should await collateral review. However, in a recent decision, Commonwealth v. Holmes, 79 A.3d 562, 563-64 (Pa. 2013), the Pennsylvania Supreme Court held that, while Grant remains good law regarding the timing for review of ineffective assistance of counsel claims, there are two exceptions when a defendant may raise ineffective assistance of counsel claims prior to post-conviction relief proceedings. The Holmes court appreciated that there "may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice." Holmes, 79 A.3d at 563-564. In such instances, the Holmes court held that trial courts retain their discretion to entertain such claims. Id. Secondly, the Holmes court recognized cases "where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record based claims, on post-verdict motions and direct appeal." Holmes, 79 A.3d at 564. In such cases "but only if (1) there is good cause shown and (2) the

10

unitary review is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from this conviction and sentence." Id. Absent the enumerated circumstances, claims of ineffective assistance of counsel should be deferred to PCRA review and these claims should not be reviewed on post-sentence motions or direct appeal. Holmes, 79 A.3d at 576.

Here, Defendant's claim regarding counsel's failure to call Dwayne Gibbs as a witness does not constitute an extraordinary circumstance because it is not apparent from the record that trial counsel was ineffective, as it is unclear how meritorious Mr. Gibbs's testimony would have been. It is unknown to the Court what if any impact his testimony would have borne on the Court's verdict, as nowhere in Defendant's Statement of Errors does he proffer any evidence as to why Mr. Gibbs's testimony was so crucial that a failure to call him as a witness constituted ineffective assistance of trial counsel. Defendant provided no affidavit or certification from Mr. Gibbs offering only a vague assertion as to what his testimony would entail. The Court cannot make inferences as to trial counsel's strategy for failing to call Mr. Gibbs or what if any measures were taken by trial counsel to secure his presence and testimony. Further, Defendant has not waived his PCRA review, nor has he demonstrated good cause. The Court clearly recognized the importance of providing Defendant with the opportunity to present his case and granted Defendant's request for a continuance "for possible additional witness." N.T. 10/15/12 pp.4-6 and N.T., 1/11/13 p.5. Based on the record before the Court, it would be mere conjecture to attempt to discern what trial counsel did or did not do to procure Mr. Gibbs, or even whether trial counsel had any knowledge of his existence. Based on the above, defendant's claim of ineffective assistance of trial counsel should await collateral review.

11

## CONCLUSION

For all the foregoing reasons, the Court's judgment of sentence should be affirmed.

BY THE COURT:

_____
ANN M. BUTCHART, J.

12